UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KIM LEE SYKES,

Plaintiff,

v.

JANET RENO, KATHLEEN HAWK, MICHAEL ISAACSON, J.W. TIPPY, DEANNA HILLER, JENNIFER FULTZ, R.L. STIFF, G.L. HERSHBERGER, and WENDY ROAL,

Defendants.

CIVIL NO. 00-80 (DWF/JMM)

REPORT AND RECOMMENDATION

The above matter is before the undersigned upon Defendants' Motion to Dismiss [Docket No. 62] and Plaintiff's Request for Default Judgment [Docket No. 70]. The matter was referred to the undersigned by Judge Donovan W. Frank for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Plaintiff's Request for Default Judgment [Docket No. 70] be denied, and that Defendant's Motion to Dismiss [Docket No. 62] be granted.

## FINDINGS OF FACT/REPORT

### I. FACTS

Plaintiff was convicted on May 19, 1997, in the United States District Court for the Northern District of Iowa, of Distribution and Conspiracy to Distribute Cocaine Base. Plaintiff is currently incarcerated at the Federal Correctional Institution at Waseca, Minnesota ("FCI-Waseca"). As part of Plaintiff's sentence, he was ordered to pay a

FILED OCT 17 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

$100.00 assessment and $7,000.00 restitution to the Iowa Division of Narcotics Enforcement. The judgment provided that these amounts were to be paid "in full immediately."

While at FCI-Waseca, Plaintiff was asked to participate in the Inmate Financial Responsibility Program ("IFRP"). The IFRP is a program administered by the U.S. Department of Justice, Federal Bureau of Prisons ("BOP"). Through the IFRP, staff members assist inmates in developing a plan for meeting their financial obligations. Although the plan is "voluntary," inmates who refuse to participate may incur numerous disciplinary consequences, including notification to the Parol Board, denial of furloughs, denial of bonus or vacation pay, loss of opportunity to be on work details outside the facility, loss of permission to purchase items in excess of the monthly spending limitation, transfer within the facility to the lowest available housing status, loss of opportunity to participate in community-based programs, denial of a release gratuity, denial of incentives for participation in residential drug release programs, and a zero score on the Responsibility section of the BP-338 Custody Classification Form. Imposition of these restrictions is known as being placed on "Refuse" status.

Plaintiff signed a document headed "Inmate Financial Contract" (an "IFRP Contract") on June 18, 1997, indicating that he agreed to participate in the IFRP. The IFRP Contract stated that Plaintiff agreed to have twenty-five dollars withdrawn from his account each quarter while he remained incarcerated at FCI-Waseca. Although Plaintiff signed the IFRP Contract, he wrote at the bottom, below the signature lines, "Don't agree to the $7,000 restitution. K.S." Plaintiff signed subsequent IFRP Contracts on September 11, 1997, October 9, 1997, and December 11, 1997. He did not write anything about

disagreement with the restitution he was ordered to pay on any of the IFRP Contracts after the one he signed on June 18, 1997.

When presented with a fifth IFRP Contract on January 12, 1998, Plaintiff refused to sign it. He was provided with a Memorandum from his unit manager, Defendant Isaacson, reminding Plaintiff of the restrictions which would be enforced against him as a result of his refusal to sign. Plaintiff still refused to sign the IFRP Contract, and as a result he was moved to the lowest housing status at FCI-Waseca, the basement of Dormitory D.

Plaintiff subsequently commenced this civil rights action in the United States District Court for the District of Columbia against Defendants pursuant to 42 U.S.C. §1983 [Docket No. 1]. On November 22, 1999, the District Court issued an Order transferring this case to the United States District Court, District of Minnesota [Docket No. 44]. After various Motions by the parties, we issued an Order on April 7, 2000 [Docket No. 57], which established the final form of the Complaint by designating as the Second Amended Complaint the following: Docket No. 1, as amended by adding Defendants [Docket No. 13, 20] and the allegations in Docket No. 21. This Order was adopted by the District Court. [Docket No. 65].

The Second Amended Complaint contains four categories of claims. Plaintiff alleges under 42 U.S.C. §1983 that (A) the procedures used by Defendants to coerce him to participate in the IFRP violated his right to due process and his right to freedom of contract, and (B) his transfer to the basement of Dormitory D violated his right to freedom from cruel and unusual punishment because he was exposed to asbestos. Plaintiff also alleges, pursuant to 28 U.S.C. §1343, that Defendants conspired to deprive him of his constitutional rights. Plaintiff requests that the Court invoke a three-judge panel, under 28

U.S.C. §2284, to enjoin Defendants from continuing the IFRP. Finally, Plaintiff alleges that Defendants withheld material information from him, thereby fraudulently inducing him to sign the IFRP Contracts.

## II. REQUEST FOR DEFAULT JUDGMENT

Plaintiff filed a virtually identical Request for Default Judgment in this case on February 25, 2000. [Docket No. 49, 50]. We recommended denial of that Request, because Defendants had filed a timely Motion to Dismiss. [Docket No. 51]. Thus, Plaintiff had not shown that Defendants had "failed to plead or otherwise defend" pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The District Court adopted our Report and Recommendation, and denied Plaintiff's Request for Default Judgment. [Docket No. 58].

Our analysis of Plaintiff's new Request for Default Judgment is identical to our analysis of his prior Request. Defendants have filed a Motion to Dismiss. [Docket No. 62]. Plaintiff has not shown that Defendants have "failed to plead or otherwise defend" pursuant to Fed. R. Civ. P. 55(a). Plaintiff's Request for Default Judgment [Docket No. 70] should be denied.

## III. MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendants argue that the Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Defendants argue that they are entitled to summary judgment on all of the claims in the Second Amended Complaint.

### A. Standard of Review for Motion to Dismiss

The Court of Appeals for the Eighth Circuit has provided this standard for the consideration of a Motion to Dismiss pursuant to Rule 12(b)(6):

> [A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir.), cert. denied, 444 U.S. 899, 100 S. Ct. 208, 62 L.Ed.2d 135 (1979). We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader. United States v. Mississippi, 380 U.S. 128, 143, 85 S. Ct. 808, 816, 13 L.Ed.2d 717 (1965); see also Bennett v. Berg, 685 F.2d 1053, 1058-59 (8th Cir. 1983); Bramlet v. Wilson, 495 F.2d 714, 717 (8th Cir. 1974).

Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In considering a motion to dismiss, courts accept a plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences. Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997). The Court may not consider materials outside the pleadings on a motion to dismiss. Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992). However, it is well-established that the Court may review the entirety of documents attached to the Complaint. Morton, 793 F.2d at 187; see also Fed. R. Civ. P. 10(c)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")

### B. Claims pursuant to 42 U.S.C. §1983

#### 1. Pleading standard

Courts generally hold pro se plaintiffs to a less stringent standard than lawyers in drafting pleadings. Cruz v. Cardwell, 486 F.2d 550, 552 (8th Cir. 1973). However, pro se pleadings must not simply state conclusions, they must set forth facts which, if taken as true, state a claim as a matter of law. Johnson v. Stark, 717 F.2d 1550,

1552 (8th Cir. 1983).

The Supreme Court has held that 42 U.S.C. §1983 "is not itself a source of substantive rights, but a method of vindicating federal rights conferred by the Constitution and other federal statutes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court stated the minimal pleading requirements for a 42 U.S.C. § 1983 cause of action:

> "By the plain terms of §1983, two -- and only two -- allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprived him of that right acted under color of state or territorial law."

Gomez, 446 U.S. at 640.

**2. Plaintiff has failed to allege that he has been deprived of a federal right through his compelled participation in the IFRP.**

The administration of the IFRP at FCI-Waseca is authorized by 28 C.F.R. §§545.10, 545.11. Section 545.10 provides generally that the BOP staff will assist each inmate in developing a plan to meet his legitimate financial obligations. Section 545.11 sets out the procedures to be employed in developing such a plan, as well as sanctions which may be imposed for non-participation in an IFRP. The IFRP at FCI-Waseca is administered in accordance with these regulations.

Plaintiff argues that the IFRP violates 18 U.S.C. §3572(d), which provides:

> (1) A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided

> by the court, unless the court establishes another schedule.
>
> (2) If the judgment, or, in the case of a restitution order, the order, permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made.

Plaintiff argues that the payment plan of the IFRP improperly usurps the authority of the courts to schedule payments, and thereby violates his right to due process.

Plaintiff also argues that the IFRP violates his constitutional rights, including his right to due process, as well as Article I, Section 10 of the Unites States Constitution, which provides in relevant part:

> No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

Plaintiff is apparently arguing that his contract with the BOP impaired his obligation to the federal district court.

The constitutionality of the IFRP is the subject of a split among the Circuits. Compare Mujahid v. Crabtree, 999 F. Supp. 1398 (D. Or. 1998), aff'd, 172 F.3d 57 (9th Cir. 1999)(upholding constitutionality of IFRP regulations), with United States v. Pandiello, 184 F.3d 682 (7th Cir. 1999)(IFRP improper delegation of judicial responsibility). The issue has not been addressed by the Court of Appeals for the Eighth Circuit. Another District Court within the Eighth Circuit, in a decision on a habeas petition upholding an IFRP, found it significant that the Court of Appeals for the Eighth Circuit had implicitly approved of the payment of fines through an IFRP by affirming a decision where a judge referenced the

IFRP when imposing sentence. Alevras v. Snyder, 49 F. Supp.2d 1112 (E.D.Ark. 1999)(citing United States v. Turner, 975 F.2d 490, 498 (8th Cir. 1992)). On appeal in that case, the Eighth Circuit found Mr. Alevras' habeas petition to be procedurally barred. The court noted that the issue of whether the sentencing court could delegate authority to the BOP to set the amount and timing of his payments had not been resolved, and expressed no opinion as to the legality of the IFRP. Alevras v. Snyder, 205 F.3d 1344, 1999 WL 1059831 (8th Cir. 1999).

In this case, we need not address the question of whether or not a district court may delegate its responsibilities regarding payment schedules, because that issue is not presented here. In this case, the District Court chose neither to establish a payment schedule, nor to delegate the responsibility for establishing a payment schedule to the BOP. Instead, the District Court ordered that the assessment and restitution it imposed were to be paid "in full immediately." The Seventh Circuit, although it has held the IFRP invalid in other contexts (see Pandiello, 184 F.3d 682), recognizes the distinction between cases in which a district court expressly delegates to the BOP its discretion to schedule fine payments, and cases where the BOP uses the IFRP to assist a prisoner in complying with the district court's order to pay a fine immediately. McGhee v. Clark, 166 F.3d 884 (7th Cir. 1998). See also United States v. Dicter, 198 F.3d 1284, 1288 n. 5 (11th Cir. 1999)(no improper delegation of sentencing authority in use of IFRP where district court's sentence made defendant's payment obligations clear).

In this case, "the court's judgment and commitment order do not delegate scheduling of fine payments or, in fact, any function to the BOP." McGhee, 166 F.3d at 886. Directives, such as the one issued in this case, to make a payment "in full" are

generally interpreted to require "payment to the extent that the defendant can make it in good faith, beginning immediately." Id. (citations omitted). Therefore, the payment schedule established for Plaintiff through the IFRP does not conflict with the District Court's Order, or with 18 U.S.C. §3572(d).

The same reasoning can be used with respect to Plaintiff's impairment of contract claim.[1] Even if a contract could be said to exist between Plaintiff and the sentencing court, the BOP's actions could not be seen to interfere with that contract. In fact, the purpose of the IFRP is to assist Plaintiff in living up to his financial obligations, rather than preventing him from fulfilling them.

Construing the Second Amended Complaint in the light most favorable to Plaintiff, we find that Plaintiff could prove no set of facts which would entitle him to relief on his claims that administration of the IFRP program violates his constitutional or statutory rights. Therefore, those claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**3. Plaintiff has failed to allege that he has been deprived of a federal right as a result of the sanctions imposed upon him for refusing to participate in the IFRP.**

Plaintiff argues that the sanctions used by the BOP in response to his refusal to participate in the IFRP violated his right to due process. Plaintiff alleges that, in

---

[1] We are by no means suggesting that Plaintiff's sentence constituted a contract. To point out two of several problems with this argument, Plaintiff did not voluntarily assume the obligation, and there was no consideration given by the district court in exchange for Plaintiff's "agreement" to pay the assessment and restitution. See Cady v. Coleman, 315 N.W.2d 593, 596 (Minn. 1982)("Consideration requires the voluntary assumption of an obligation by one party on the condition of an act or forebearance by the other.")

response to his refusal to participate in the IFRP, he was placed in the worst available housing at FCI-Waseca, the basement of Dormitory D.

To maintain an actionable due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997). Therefore, Plaintiff cannot maintain a due process claim based on his confinement in Dormitory D, unless he can establish that he had a constitutionally protected liberty interest in being housed in a different area of FCI-Waseca.

An actionable liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown that he has suffered the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In that case, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has explained that, under Sandin, prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

Administrative segregation, such as Plaintiff's confinement in Dormitory D, is generally not the type of "atypical, significant deprivation" to which due process protections attach. Ochs v. Thalacker, 90 F.3d 293, 297 n. 4 (8th Cir. 1996)(citing Sandin,

515 U.S. 472). The plaintiff in Sandin was required to spend thirty days in segregated confinement. Yet the Supreme Court found the plaintiff's brief term of isolated confinement was not the type of unusual or dramatic hardship that would implicate a constitutionally protected liberty interest. 515 U.S. at 486.

Given the Supreme Court's holding in Sandin, as well as the rulings in many other federal court cases decided thereafter,[2] the Court concludes, as a matter of law, that Plaintiff's fourteen-month assignment to the basement of Dormitory D does not constitute the type of hardship that would implicate a constitutionally protected liberty interest. It follows that Plaintiff was not entitled to the procedural protections of due process before being placed in Dormitory D. He has therefore failed to plead an actionable due process claim.[3]

---

2

Cases decided after Sandin show that even periods of confinement much longer than 30 days generally will not support an actionable due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners"). It also is worth noting that in two unpublished (and therefore non-precedential) opinions, the Eighth Circuit found that periods of segregated confinement did not constitute an atypical and unusual hardship. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim).

3

In addition, as one court put it, if we were to adopt a rule that the government could not impose sanctions against an inmate for declining to make payments on court-ordered amounts due, "[s]uch a rule would be news to the IRS and other agencies that routinely employ coercive measures to collect money owed to the government." Mujahid, 999 F. Supp. 1398, 1404, aff'd 172 F.3d 57 (9th Cir. 1999).

### 4. Plaintiff has failed to allege a deprivation of his Eighth Amendment rights.

"To make out an Eighth Amendment violation a plaintiff must show a serious deprivation of 'the minimal civilized measure of life's necessities' and 'offending conduct [that is] wanton.'" Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999)(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "A successful challenge to conditions of confinement requires a showing that prison officials have been deliberately indifferent to an inmate's health or safety." Key, 176 F.3d at 1086 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Exposure to hazardous conditions may, in some cases, rise to such a level as to constitute cruel and unusual punishment. Benter v. Hedgepeth, 27 F.3d 571, 1994 WL 285774 (8th Cir. 1994).

In the Second Amended Complaint, Plaintiff alleges that the basement of Dormitory D is "acutely infested with . . . asbestos", and that the staff at FCI-Waseca is aware of the levels and amounts of asbestos in the environment. Documents attached to the Second Amended Complaint reveal that asbestos abatement occurred in certain areas[4] of FCI-Waseca in August 1997. Plaintiff was not moved to Dormitory D until January 1998.

Plaintiff has not pled facts which could establish his exposure to hazardous conditions or deliberate indifference to his health on the part of Defendants. Plaintiff has not alleged that he was exposed to friable asbestos. In addition, the information provided to the Court indicates that officials at FCI-Waseca have responded promptly and appropriately to situations which posed a potential risk of asbestos contamination. Plaintiff

---

[4] Dormitory D is not listed as one of the areas in which abatement occurred.

has failed to state a claim of cruel and unusual punishment upon which relief can be granted.

Even if the Second Amended Complaint stated an Eighth Amendment claim, we would recommend granting Defendant's Motion for Summary Judgment on this issue. The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986. Summary judgment is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

These principles have been explained and applied by the Court of Appeals for the Eighth Circuit in numerous cases. E.g., Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992); Fischer v. NWA, Inc., 883 F.2d 594, 598 (8th Cir. 1989); cert. denied, 495 U.S. 947 (1990); Health Care Equal. Comm. of the Iowa Chiropractic Soc'y. v. Iowa Medical Soc'y., 851 F.2d 1020, 1031-1032 (8th Cir. 1988).

Defendants have submitted two Declarations from Larry Gannon, the current Safety Manager at FCI-Waseca. Gannon has worked in safety management at FCI-Waseca since 1989. As such, he has been and is responsible for ensuring that the institution acts in conformity with federal statutes and regulations regarding human health and safety.

Gannon's first Declaration states that asbestos was discovered in Dormitory D in December 1995. A state-licensed asbestos contractor was hired and performed abatement of the area where the asbestos was located. Air samples taken on February 1, 1996 indicated that the air quality in Dormitory D was within required safety limits for humans. Since February 1996, the staff at FCI-Waseca continues to conduct monthly inspections of the air quality in inmate housing. These inspections have revealed no friable asbestos in the living quarters of Dormitory D.[5]

---

[5] Gannon's second Declaration describes an incident on February 23, 1999, when a work crew discovered material which appeared to be asbestos while removing a steel door frame. The staff instituted asbestos containment procedures, and air tests revealed that the level of asbestos in Dormitory D did not exceed hazardous levels, as set by the Occupational Safety and Health Administration. Contrary to Plaintiff's assertion, these facts are not inconsistent with Gannon's first Declaration, which stated that no friable asbestos had been detected in Dormitory D while Plaintiff was housed there.

We accept as true Plaintiff's allegation that asbestos insulation still exists in the area of Dormitory D where he was housed. However, the documents submitted by Defendants show that Plaintiff was not exposed to friable asbestos. "[I]t is unfortunate, but the fact remains that asbestos abounds in many public buildings. Exposure to moderate levels of [non-friable] asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual." McNeil v. Lane, 16 F.3d 123, 124 (7th Cir. 1993). We find, as a matter of law, that a health risk rising to the level of cruel and unusual punishment did not exist during the time Plaintiff was housed in Dormitory D.

### C. Conspiracy Claim

Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights in violation of 28 U.S.C. §1343. Section 1343 is a jurisdictional statute, and does not provide any substantive rights. However, we read the Second Amended Complaint as alleging a cause of action under 42 U.S.C. §1985, which proscribes conspiracies between two or more persons for the purpose of depriving another person of certain constitutional rights. In any case, as we have found that Plaintiff has not sufficiently alleged any violation of his rights, and that his individual claims against Defendants should be dismissed. We likewise recommend that the conspiracy claim in the Second Amended Complaint be dismissed.

### D. Request for a Three-Judge Court

Plaintiff requests that we invoke a three-judge panel to determine the constitutionality of the regulations underlying the IFRP. He gives 28 U.S.C. §2284 as the authority under which we should seek to convene a three-judge panel. While 28 U.S.C.

§2284 does provide for a district court of three judges to be convened in certain situations, it applies only to constitutional challenges to "the apportionment of congressional districts or the apportionment of any statewide legislative body," and therefore is not applicable in this case.[6]

**E. Fraudulent Inducement Claim**

The Second Amended Complaint is not entirely clear as to what material information Defendants allegedly withheld from Plaintiff prior to his agreeing to participate in the IFRP. It appears that Plaintiff believes Defendants should have informed him that, based upon 18 U.S.C. §3572(d)(2), they did not have a legal right to schedule the payment of his court-ordered assessment and restitution.

To establish a claim of fraudulent inducement, Plaintiff would have to show that Defendants falsely represented or omitted a material fact that was susceptible of knowledge with the intent of inducing him to act, that he justifiably relied upon the representation or omission, and that he suffered damages as a proximate result of that reliance. Stowman v. Carlson Companies, Inc., 430 N.W.2d 490, 492 (Minn. Ct. App. 1989)(citing Davis v. Re-Trac Manuf. Corp., 149 N.W.2d 37 (Minn. 1967)). Plaintiff has not sufficiently pled any of these elements.

As explained in Section III.B. of this Report, the application of the IFRP to Plaintiff did not run contrary to 18 U.S.C. §3572(d)(2) or any constitutional provision. The IFRP is a long-standing program authorized by federal regulations. Plaintiff's suggestion

6 The statute which required a three-judge court for all constitutional challenges to existing statutes, 28 U.S.C. §2282, was repealed in 1976. Act of Aug. 12, 1976, Pub. L. No. 94-381, §7, 90 Stat. 1119.

that the fact that the district court which sentenced him had the authority to make his assessment and restitution due in installments, rather than all at once, was material information the staff at FCI-Waseca was required to disclose, is without merit. In addition, Plaintiff cannot show that he suffered damages as a proximate result of his signing the IFRP Contracts. The money withdrawn from his account went entirely towards repayment of his court-ordered assessment and restitution, amounts he was required to pay. He was not damaged through his participation in the IFRP.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Plaintiff's Request for Default Judgment [Docket No. 70] be denied, and that Defendant's Motion to Dismiss [Docket No. 62] be granted.

Dated: October 16, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **October 30, 2000** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.